672 S.E.2d 598

**Charles & Kathryn BEAHM, et al.,
Plaintiffs Below, Appellants,**

v.

**7–ELEVEN, INC. and Melissa Spinks,
Defendants Below, Appellees.**

No. 33833.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 9, 2008.

Decided Aug. 26, 2008.

Dissenting Opinion of Justice
Starcher Dec. 30, 2008.

Paul G. Taylor, Esq., Martinsburg, for Appellants.

Charles F. Printz, Jr., Esq., Brian M. Peterson, Esq., Bowles Rice McDavid Graff & Love, LLP, Martinsburg, for Appellees.

PER CURIAM:

The instant action is before this Court upon the appeal of Charles and Kathryn Beahm, Randy and Kathy Johnson, and the Jefferson City Council on Aging [hereinafter "Appellants"] from a January 4, 2007, order granting defendants', 7–Eleven, Inc. and Melissa Spinks [hereinafter "Appellees"], Motion for Summary Judgment. On appeal, the Appellants allege that errors were committed by the circuit court when it applied the doctrines of *res judicata* and/or claim preclusion to the instant action, and when the circuit court held that Appellants suffered no recoverable damages. Conversely, the Appellees allege that summary judgment was appropriate because the instant action is barred by *res judicata* and the Appellants have no recoverable damages under West Virginia law. This Court has before it the petition for appeal, all matters of record and briefs and arguments of counsel. For the reasons expressed below, the January 4, 2007, order of the Circuit Court of Jefferson County is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The instant matter is the second of two actions arising from a January 2000, gasoline release occurring from underground storage tanks at 7–Eleven, Inc.'s store in Ranson, West Virginia. The Appellants claim that gasoline from 7–Eleven's store contaminated groundwater that circulates beneath their properties, and that as a result, their properties were devalued.[1] All of the Appellants' properties allegedly affected by contaminated

groundwater draw their water supply through a public water system. When 7–Eleven received notice of the leak and its contamination around February 2000[2], it identified the leaking tank and began the remediation process as required by federal and state law. 7–Eleven, Inc. and its insurers have paid all of the costs of remediating the entire site, including Appellants' properties.[3]

The first action to arise from the 7–Eleven gasoline leak was *Proctor v. 7–Eleven, Inc., et al*, Civil Action No. 3:02–CV–21, filed in the Jefferson County Circuit Court on February 21, 2002. *Proctor*, which was removed to the U.S. District Court for the Northern District of West Virginia, involved eight property owners in Ranson, West Virginia alleging that their groundwater was contaminated by the gasoline release. During the pendency of that action, the *Proctor* plaintiffs moved to amend their complaint to add new parties on two separate occasions. In their first motion to amend, the *Proctor* plaintiffs sought to add Melissa Spinks as a defendant. In their second motion to amend, the *Proctor* plaintiffs sought to add Charles and Kathryn Beahm and Randy and Kathy Johnson as plaintiffs. The federal district court denied both motions for leave on the grounds that the statute of limitations had expired. The Beahms and Johnsons, themselves, then sought an extraordinary writ of mandamus to challenge the federal district court's decision and to have themselves added as plaintiffs in the *Proctor* action, which was denied by the Fourth Circuit Court of Appeals.

During the pendency of the motions to

---

1. The Appellants are owners of primarily residential real property in the City of Ranson, Jefferson County, West Virginia, with the exception of the Council on Aging, which is a corporate property and utilizes the property for its business purposes as a senior citizen center.

2. The leak was discovered by the Town of Ranson and certain individuals with property in the immediate vicinity of the 7–Eleven property in late February 2000. At that point, the West Virginia Department of Environmental Protection ordered 7–Eleven to determine the extent of the pollution and formulate a plan to remediate the contamination.

3. Defendant 7–Eleven retained a company called ENSR as its remediation contractor. As part of the remediation plan, monitoring wells were installed to determine the extent of the contamination. On April 30, 2002, ENSR submitted a report to the West Virginia Department of Environmental Protection. It was determined that monitoring well 11, near the home of Charles and Kathryn Beahm, contained benzyne, toluene, ethyl benzyne and xylene. Monitoring well 12, near the home of Kathy and Randy Johnson also contained concentrations of benzyne and BTEX.

amend in the *Proctor* case, Appellants [4] filed the instant action in the Circuit Court of Jefferson County, stating virtually identical claims to those raised in the *Proctor* action. In addition to suing 7–Eleven, Appellants also sued Melissa Spinks, a non-diverse defendant, to prevent removal to federal district court. This matter proceeded through discovery concurrently with the *Proctor* litigation until the circuit court stayed the case pending an outcome in *Proctor* on the grounds that the two cases involved identical questions of fact and law, involving the same types of claims, issues, parties, attorneys and expert witnesses.

On April 26, 2005, the entire *Proctor* action was dismissed on summary judgment. The federal district court found that the plaintiffs suffered no damages recoverable under West Virginia law. The *Proctor* plaintiffs filed an appeal asserting that they had evidence of recoverable damages. However, they did not appeal the district court's refusal to permit the Beahms and Johnsons to intervene. The Fourth Circuit Court of Appeals affirmed the dismissal of the *Proctor* action on May 18, 2006. The circuit court lifted the stay in this action on October 5, 2006. On January 4, 2007, the circuit court granted the Appellees' motion for summary judgment, finding that *res judicata* barred the action. The Appellants filed a motion for reconsideration, which was denied by the circuit court by order dated March 5, 2007.

## II.

### STANDARD OF REVIEW

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Co. v. Federal Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, "[a] circuit court's entry of summary

judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Mindful of these standards, we proceed to consider the arguments of the parties.

## III.

### DISCUSSION

#### A. Res Judicata

The central issue in this appeal is whether the lower court was correct in concluding that *res judicata* principles preclude Appellants' claims from going forward. Appellants allege that error was committed by the circuit court when it applied the doctrine of *res judicata* to the instant action because the statute of limitations has not yet begun to run because Appellants have suffered continuous tortious injuries. Conversely, the Appellees allege that summary judgment was appropriate because the instant action is barred by *res judicata* since the statute of limitations has expired. Upon review of the record before us, we conclude that *res judicata* bars the instant action.

The U.S. District Court for the Northern District of West Virginia ruled that the statute of limitations has expired on all claims against 7–Eleven and Melissa Spinks arising out of the gasoline release.[5] Although the decision refusing to permit Melissa Spinks as a defendant was appealed, the federal district court's decision refusing to add the Beahms and Johnsons as plaintiffs was not challenged. The Fourth Circuit did not address the merits of the statute of limitations issue. All appeals have been exhausted, and the *Proctor* judgment is final.

*Res judicata* or claim preclusion "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *State v. Mil-*

---

4. Appellants Beahm and Johnson filed the instant civil action in the Jefferson County Circuit Court on January 24, 2003. The Jefferson County Council on Aging was added as a party by later amendment.

5. In fact, the federal district court made the statute of limitations rulings twice. First, when the *Proctor* plaintiffs sought to add another defendant, Melissa Spinks, to their action. Subsequently, when the *Proctor* plaintiffs brought a second motion to amend their complaint to add the Beahms and Johnsons as plaintiffs.

*ler,* 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (1995). We recognized in *Conley v. Spillers,* 171 W.Va. 584, 588, 301 S.E.2d 216, 219 (1983), that "the underlying purpose of the doctrine of *res judicata* was initially to prevent a person from being twice vexed for one and the same cause." In *Conley,* we also observed the following additional rationale underlying the doctrine of *res judicata:*

> "To preclude parties from contesting matters that have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, claim preclusion serves to conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."

*Id.* (*quoting Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.E.2d 210, 217 (1979)).

▮ "For a second action to be a second vexation which the law will forbid, the two actions must have (1) substantially the same parties who sue and defend in each case in the same respective character, (2) the same cause of action, and (3) the same object." *Hannah v. Beasley,* 132 W.Va. 814, 821, 53 S.E.2d 729, 733 (1949). Accordingly, we held in *Blake v. Charleston Area Med. Ctr., Inc.,* 201 W.Va. 469, 498 S.E.2d 41 (1997):

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Id.* at Syl. Pt. 4, 498 S.E.2d 41. The third prong of this test is most often the focal point, since "the central inquiry on a plea of *res judicata* is whether the cause of action in the second suit is the same as the first suit." *Conley,* 171 W.Va. at 588, 301 S.E.2d at 220.

### 1. Final Adjudication on the Merits

The parties agree that the first element of *res judicata* has been met in the instant action by virtue of the final judgment entered in *Proctor.* However, the Appellants contest whether the second and third elements have been satisfied.

### 2. Same Parties or Persons in Privity

Appellants contend that the circuit court erred by finding that they were in privity with the *Proctor* litigants. Upon review of the record before us, we find that the record clearly supports the circuit court's conclusion that privity exists.

▮ A plaintiff cannot simply escape the application of *res judicata* or collateral estoppel simply because he was not formally joined as a party in the prior litigation. *Gribben v. Kirk,* 195 W.Va. 488, 499 n. 21, 466 S.E.2d 147 (1995). This Court has recognized that "[p]rivity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property.'" *West Virginia Human Rights Comm'n v. The Esquire Group, Inc.,* 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005)(*quoting* Syl., *Cater v. Taylor,* 120 W.Va. 93, 196 S.E. 558 (1938)).

As we previously explained in *West Virginia Human Rights Comm'n v. Esquire Group, Inc.,* 217 W.Va. 454, 460–61, 618 S.E.2d 463, "the concept of privity with regard to the issue of claim preclusion is difficult to define precisely but the key consideration for its existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party again whom preclusion is asserted have been adequately represented." It has been recognized that "[p]rivity ... 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata.'* " *Rowe v. Grapevine Corp.,* 206 W.Va. 703, 715, 527 S.E.2d 814 (1999). In other words, "preclusion is fair so long as the relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings that

would be available to a party." *Gribben,* 195 W.Va. at 498 n. 21, 466 S.E.2d at 157 n. 21.

In determining whether privity exists, we have previously utilized the doctrine of "virtual representation." Virtual representation, a variety of privity, "precludes religitation of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty." *Galanos v. National Steel Corp.,* 178 W.Va. 193, 195, 358 S.E.2d 452, 454 (1987). In *Galanos,* we offered various examples of circumstances of when the doctrine of virtual representation can be applied in accord with due process principles. One such example was when a nonparty's actions involve deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment, he may be deemed to be bound by such judgment. *Id.* at 455, 196, 358 S.E.2d 452 (*citing Crane v. Comm'r,* 602 F.Supp. 280 (D.Me.1985); *Katz v. Blum,* 460 F.Supp. 1222 (S.D.N.Y.1978), *aff'd* 603 F.2d 213 (2d. Cir.1979)). The facts of this case seemingly fit within that category of virtual representation as recognized in *Galanos.*

The Appellants filed the instant civil action to avoid the impact of the federal district court's ruling against them. The record conclusively demonstrates that the Beahms and Johnsons sought to be added as parties to the *Proctor* suit. After the federal district court refused the *Proctor* plaintiffs' motion to amend their complaint to add the Beahms and Johnsons as plaintiffs, the Beahms and Johnsons themselves sought an extraordinary writ from the Fourth Circuit Court of Appeals to challenge the federal district court's decision, recognizing that they faced having their claims barred by *res judicata* by any decisions in the *Proctor* case. In their petition for writ of mandamus to the Fourth Circuit, they made the following argument:

> [D]isposition of the claims of the Plaintiffs in this action [i.e. the Proctor plaintiffs] in the absence of the Petitioners [i.e. the Beahms and Johnsons] as parties Plaintiff will impair and impede the Petitioner's ability to protect their claim. Petitioners, by not moving to join this action as parties Plaintiff, risk the barring of their claims by

res judicata and or collateral estoppel, e.g. see *Haba v. Big Arm Bar & Grill, Inc.,* 196 W.Va. 129, 468 S.E.2d 915 (1996).

Pet. for Writ of Mandamus, Fourth Circuit Court of Appeals No. 05–1598, p.6.

Even though the Beahms and Johnsons sought to join the *Proctor* action as parties plaintiff and the Council on Aging did not, we nonetheless find that the Council on Aging is also in privity with the *Proctor* litigants. All of the parties to this case share common counsel with the parties in the *Proctor* litigation. Thus, all of the parties to this suit had notice of the *Proctor* suit, and would have had the same practical opportunity to control the course of the proceedings. Additionally, all of the parties were allegedly injured by the same release of gasoline. Accordingly, Appellants rely not only on the same expert witnesses and expert opinions as those in *Proctor,* but also the very same fact witnesses, documents and exhibits. There can be no question that the interests of the Appellants and the *Proctor* litigants are decidedly the same.

We acknowledge that something more than a common interest between the prior and present litigants is required for privity to be established. *Gribben,* 195 W.Va. 488, 498 n. 21, 466 S.E.2d 147, 157 n. 21. Indeed, we have previously cautioned that the doctrine of virtual representation cannot be construed to imply privity to all who derive injury from a single wrongful act. *Galanos,* 178 W.Va. at 195, 358 S.E.2d at 454. However, under the circumstances of this case, the only reasonable conclusion is that these Appellants' interests have been adequately represented by their own attorney in the *Proctor* litigation who has advanced substantially the same proof in both cases. The evidence the Appellants rely upon has been reviewed by the federal courts and the matter had been adjudicated. Privity exists between the Appellants and the *Proctor* plaintiffs.

### 3. Similarity of Causes of Action

The third factor which must be present to support a *res judicata* determination is a finding that "the cause of action identified for resolution in the subsequent proceeding ei-

ther must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *Blake*, 201 W.Va. at 472, 498 S.E.2d at 44, at Syl. Pt. 4. Appellants allege that the final element of *res judicata* is not established in the instant matter because the only common thread between the two groups of Plaintiffs is that they were both injured by the same gasoline leak. We disagree. The two causes of action are virtually identical.

This Court has explained that with respect to the identity of the two causes of action:

"For purposes of res judicata, 'a cause of action' is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief... The test to determine if the ... cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues ... If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata."

*Blake*, 201 W.Va. at 476, 498 S.E.2d at 48 (*quoting White v. SWCC*, 164 W.Va. 284, 290, 262 S.E.2d 752, 756 (1980)).

The requirements of *res judicata* specifically contemplate:

"[a]n adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had

the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being res judicata."

*Blake*, 201 W.Va. at 477, 498 S.E.2d at 49 (*quoting* Syl. Pt. 1, *Sayre's Adm'r v. Harpold*, 33 W.Va. 553, 11 S.E. 16 (1890)). Accordingly, *res judicata* may operate to bar a subsequent proceeding even if the precise cause of action involved was not actually litigated in the former proceeding so long as the claim could have been raised and determined. *Id.*

■ Appellants contend that the instant action is different than *Proctor* because the properties' damages in the two cases are different, the damages were discovered at different times [6], and there was an invasion of harmful vapors in the Council on Aging's Senior Center. We find Appellants' argument disingenuous, and the differences between the two cases too insignificant to avoid claim preclusion.

■ The *Proctor* complaint alleged four causes of action: 1) strict liability; 2) negligence; 3) punitive damages; and 4) violation of West Virginia Code § 55–7–9. The identical four claims were alleged in the instant action, also adding the claims of nuisance and trespass. The prayer for relief made by the Appellants in this action is almost identical to that in *Proctor*. The plaintiffs in each cause of action specifically request the fair market value of their real estate prior to its alleged destruction; inconvenience and loss of wages and income; fright, stress, aggravation and mental anguish; out-of-pocket expenses; medical expenses, including costs of examinations and testing; emotional distress; and injuries to plaintiff's bodies. Each of the claims in the instant action could have been resolved in the *Proctor* action, had they been raised. The claims of nuisance and trespass could have been brought in *Proctor* because

---

**6.** Specifically, Appellants allege that the facts of this case constitute both a continuing tortious trespass and nuisance, and therefore, the statute of limitations is tolled. Appellants also argue that the discovery rule tolls the statute of limitations. We will not address the merits of the Appellants' argument that the statute of limitations has not begun to run because it is not pertinent to the ultimate issue of whether *res*

*judicata* applies. This issue was addressed in the *Proctor* litigation and fully adjudicated. Even if the federal district court's ruling was legally incorrect or erroneous, this Court has consistently held that an erroneous ruling will not prevent the matter from being *res judicata*. *Blake*, 201 W.Va. at 477, 498 S.E.2d at 49 (*quoting* Syl. Pt. 1, *Sayre's*, 33 W.Va. 553, 11 S.E. 16.)

they arose out of the same core of operative facts as all of the other claims.

██ Additionally, Appellants have failed to provide us any evidence that the instant action is so vastly different than the *Proctor* litigation that application of *res judicata* would violate the notions of due process. The fact that the specific properties in the instant action are different than those in the *Proctor* action is of no moment. Each and every property is unique from another, including the three properties that are joined together in this cause of action. The fact that different pieces of property allegedly sustained damages does not preclude the effects of *res judicata*. Furthermore, the fact that discovery of the leak occurred at different times, and the fact that some properties sustained vapor infiltration while others did not is equally unconvincing.[7] The Appellants cannot now credibly argue that these cases are dissimilar, after attempting to combine the claims of the Beahms and Johnsons with the *Proctor* claims in federal district court. Likewise, although the Council on Aging did not attempt to join the *Proctor* litigation, the similarity of their claims to the *Proctor's* is undeniable because as a joint party-plaintiff in this action, the Council on Aging brings the very same claims that the Beahms and Johnsons have alleged.

We wish to emphasize once again that the application of *res judicata* is dependent upon the distinctive characteristics of a particular case. Based upon the facts and circumstances of the instant appeal, we find that the elements of *res judicata* have indeed been satisfied in this case. The circuit court did not commit error in finding that the Appellants' claims against 7–Eleven and Melissa Spinks are precluded. Accordingly, we find that summary judgment was appropriate.

### B. Damages

Appellants allege a second assignment of error regarding the issue of recoverable damages in this matter. However, because we have resolved the matter on appeal by addressing the issue of whether the circuit court correctly applied the doctrine of *res judicata* to bar the present action, we decline

to address the damages issue. It is not necessary that we reach the merits of that argument, as the issue of *res judicata* is dispositive in this matter.

## IV.

### CONCLUSION

For the reasons stated herein, the circuit court's order of January 4, 2007, is hereby affirmed.

**Affirmed.**

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justice ALBRIGHT did not participate in the issuance of this opinion.

STARCHER, J., dissenting:

(Filed Dec. 30, 2008)

I dissent to the majority opinion's determination that the plaintiff's claims were barred by *res judicata*.

The fundamental basis for a *res judicata* determination is that the prior ruling must have resolved the case on the merits. The "prior ruling" referenced in the instant case involves the parties in the *Proctor, et al.* litigation in federal court, and the federal court's summary judgment ruling dismissed those plaintiffs' claims as barred by the statute of limitation.

The plaintiffs in this case, Charles and Kathryn Beahm, were *never* a party to the *Proctor* litigation in federal court. More importantly, the Beahms discovered that their land had been polluted by defendant 7–Eleven's negligence several years *after* the plaintiffs in the *Proctor* case discovered the pollution. The record indicates that while the gasoline leak from the 7–Eleven tank was discovered in February 2000, monitoring wells did not find pollution on the plaintiff's land until February 2002. The Beahms did not learn of the pollution finding until April 30, 2002, and filed the instant suit in the circuit court on January 24, 2003—well within the statute of limitation.

---

7. See footnote 6, *supra*.

Put simply, the plaintiffs timely filed their case once they discovered that their land had been damaged by 7–Eleven's negligence. The majority opinion was wrong to conclude that the plaintiffs' case was barred by the statute of limitation through operation of the doctrine of *res judicata*, merely because the federal district court decided that the *Proctor* plaintiffs' cases were barred by the statute of limitation.

I therefore respectfully dissent.